UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SPINAL IMAGING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 09-11873-LTS |
| | ) | |
| AETNA HEALTH | ) | |
| MANAGEMENT LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| RADIOLOGY DIAGNOSTICS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 12-11521-LTS |
| | ) | |
| AETNA HEALTH | ) | |
| MANAGEMENT LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

March 26, 2014

SOROKIN, C.M.J.

Pending before the Court are cross-motions for summary judgment. Doc. No. 115; Doc.

No. 124.[1] For the following reasons, Plaintiffs' motion for summary judgment is DENIED and

Defendants' motion for summary judgment is ALLOWED IN PART AND DENIED IN PART.

---

[1] As the parties have briefed the instant motions on the docket for civil action number 09-11873, all references to docketed documents are to docket entries in that action.

# I.    PROCEDURAL BACKGROUND

This Memorandum and Order addresses claims filed in two separate actions and the motions filed in both those actions.  Although the Court has not consolidated the two actions formally, the two cases have proceeded together.  In the first action, Plaintiff Spinal Imaging, Inc. (Spinal) sued Aetna Health Management, LLC and Aetna Life Insurance Company (collectively, Aetna) for two claims: breach of contract and violation of Chapters 93A and 176D of the Massachusetts General Laws.  The claims arose from Aetna's alleged failure to pay medical claims submitted by Spinal for services rendered to Aetna's insureds between 2003 and 2008.  In the second action, Plaintiff Radiology Diagnostics, LLC (RD) sued the same two defendants for the same two claims, breach of contract and violation of Chapters 93A and 176D, as well as a third claim asserting common law negligence for failing to pay submitted claims promptly.  The claims and facts in the second case are substantially identical to those in the first except that RD submitted the claims (rather than Spinal) during a later period, namely between 2008 and 2012.  Aetna has counterclaimed in the first action brought by Spinal.  Doc. No. 30 at 12-16.  Together, the two cases involve approximately twelve thousand individual claims for payment based on medical services rendered by Plaintiffs.  Doc. No. 115-3 at 17; Doc. No. 136 ¶ 27.

The parties hotly contested the scope of discovery and Aetna's compliance with the Court's discovery orders.  On April 30, 2013, the Court ordered that the two actions would be resolved on the basis of exemplar claims.  Doc. No. 84 at 3.  No party objected to proceeding in this manner.  For each of the ten years at issue in the two actions, the Court ordered the random selection of twenty-five claims to serve as exemplars.  Doc. No. 87 at 2.  In addition, the Court

permitted each side to select up to an additional thirty-four exemplars.[2] Id. Thereafter, the parties completed discovery on the exemplar claims.

Now, Plaintiffs move for summary judgment on the breach of contract and violation of Chapter 93A and 176D counts in their complaints.[3] Doc. No. 117. Defendants have cross-moved for summary judgment on Plaintiffs' breach of contract, negligence, and violation of Chapter 93A and 176D counts.[4] Doc. No. 125. The Court held a hearing on the Motions on February 19, 2014.

## II.    STATEMENT OF FACTS

The undisputed facts are set forth below. The reasonable inferences in favor of the non-moving party which are drawn from those facts are expressly noted below or drawn only in the course of resolving the competing motions.

Plaintiffs are in the business of interpreting x-rays taken by other medical providers, chiefly chiropractors. Doc. No. 138 ¶ 1. Plaintiffs advertise that they provide state-of-the-art professional interpretations of x-rays at "no cost to the doctor" taking the x-ray. Doc. No. 115-2

---

[2] There seems to be some confusion as to the total number of exemplars. There are twenty-five randomly selected exemplars for each of the ten years in question, except for one year when, inadvertently, only twenty-four exemplars were selected. See Doc. No. 129 ¶ 2003-25. Accordingly, there are 249 randomly selected exemplars. Plaintiffs selected an additional thirty-four exemplars and Defendants selected thirty-two. That brings the total number of exemplar claims to 315.

[3] The Plaintiffs in both actions, Spinal Imaging, Inc. and Radiology Diagnostics, LLC, have filed one set of papers for the instant motion and have not distinguished between the two actions for the purposes of the motions. Defendants have done the same. Accordingly, the Court will not distinguish between the two cases. Similarly, "Plaintiffs" will refer to the plaintiffs in both actions collectively.

[4] Neither party has addressed Defendants' counterclaims in their motions for summary judgment and, accordingly, those claims survive the instant motions unaffected.

at 10-15. At one point they described their service as providing "[r]isk management through 2nd opinion pathology." Doc. No. 76-6 at 1. At other points, they instructed the referring doctor to bill insurance for "taking the x-rays" while Plaintiffs stated they bill for the "professional component . . . as the initial professional reviewer of the x-rays," indicating that Plaintiffs, and not the referring provider, would complete the initial reading. Doc. No. 115-2 at 13.

Prior to reading an x-ray, in each case, Plaintiffs obtain a completed "Assignment of Benefits" form from the patient. Doc. No. 138 ¶ 2; Doc. No. 115-2 at 72 (sample Assignment of Benefits form). The Assignment of Benefits form authorizes Plaintiffs to bill the patient's insurance carrier directly for the medical services rendered; it also provides that, in the event Plaintiffs are not paid by the insurer, the patient will be responsible for the bill. Doc. No. 115-2 at 72. Aetna is not a party to the Assignment of Benefits form. Id.

After receiving the Assignment of Benefits form, Plaintiffs interpreted one or more x-rays for the patient and billed Aetna only for the interpretation of the x-ray. Doc. No. 136 ¶¶ 9, 12, 12.1.

Plaintiffs assert that the physicians taking the x-ray "will bill Aetnas for taking x-rays [only]." Doc. No. 136 ¶ 12.1. To support this proposition, Plaintiffs cite, only, Spinal's answer to Interrogatory Number 19, which, in one sentence, explains that Spinal uses the American Medical Association's CPT codes for billing purposes. Doc. No. 115-2 at 66.[5] This is not

---

[5] Spinal's response to Interrogatory Number 19 reads, in relevant part: "Spinal submits an invoice to the respective patient insurance company for payment using American Medical Association CPT codes. CPT (Current Procedural Terminology) Codes and CPT Code modifiers are defined by the American Medical Association CPT Professional Edition." Doc. No. 115-2 at 66. Elsewhere, Plaintiffs assert that Dr. Abelson, the president and CEO of both Plaintiff corporations, told an investigator for Aetna that Plaintiffs "do not perform the second reading on the x-rays." Doc. No. 136 ¶ 49. When the investigator brought up his interviews with the

evidence sufficient to establish for each and every claim, or even one claim, that the referring physician billed <u>only</u> for taking the x-ray. Moreover, Aetna disputes this assertion by citation to an affidavit of an employee. Doc. No. 129. In this affidavit, the employee identifies 169 exemplar claims in which the referring physician submitted a claim using the "global" CPT code, which encompasses <u>both</u> taking and interpreting the x-ray. <u>See, e.g.</u>, Doc. No. 129 ¶¶ 2003-1, 2003-12.

For some period of time, Aetna paid Plaintiffs bills. Those claims are not at issue in the pending summary judgment motions. At some point in 2004, however, Aetna came to the conclusion it was paying Plaintiffs to interpret the very x-rays it had already paid a chiropractor to interpret. Doc. No. 115-4 at 6, 10. For Aetna, these two cases, in essence:

Q: . . . come down to this, that Aetna pays the first bill that it receives for the X-ray read; and then if it gets another bill for a read of the same X-ray, it declines?

A: That is true.

Doc. No. 115-4 at 10-11 (excerpt from Rule 30(b)(6) deposition of Aetna).

Having reached this conclusion—namely, that it was paying twice for reads of the same x-ray—Aetna investigated Plaintiffs' submissions, made written demand on Plaintiffs for over $400,000 in alleged overpayments, Doc. No. 76-9; Doc No. 76-11, and placed a "flag" on all of Plaintiffs' reimbursement claims. Doc. No. 115-4 at 6. The flag meant that "[n]o bills for Spinal would be paid without medical records being reviewed" by a "medical director of Aetna." <u>Id.</u>

referring offices, Dr. Abelson stated that "those other offices should produce the first opinion report to substantiate their claim of performing the first reading." <u>Id.</u> These statements by Dr. Abelson are not sufficient evidence to establish that Plaintiffs performed the first read because Dr. Abelson does not have personal knowledge of the activities within the offices of the referring physicians.

Apparently, Aetna paid few, if any, of Plaintiffs' claims thereafter. Although Plaintiffs assert that they "only recently stopped submitting written appeals" when their claims were denied, Doc. No. 138 ¶ 20, there is no evidence to support that claim, and, in fact, in his Rule 30(b)(6) deposition on behalf of Plaintiffs, Dr. Abelson stated that Plaintiffs stopped submitting written appeals "many, many, many years ago," Doc. No. 127-1 at 10.

Each side moves for summary judgment on Plaintiffs' claims, with both leaving the litigation of Defendants' counterclaims for another day. Apart from being in agreement that Plaintiffs submitted bills which Aetna did not pay, the parties dispute much of what transpired thereafter. The parties' claims, arguments, evidence (and lack thereof) are discussed in detail below regarding each of the pending motions and considered in light of the rules governing consideration of facts on summary judgment. Specifically, on Plaintiffs' motion, the Court accepts Defendants' version of those material facts in dispute while drawing all reasonable inferences in Defendants' favor. The Court does the opposite when considering Defendants' motion.

II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Prescott v. Higgins</u>, 538 F.3d 32, 39 (1st Cir. 2008) (quoting <u>Medina–Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990)). When cross-motions for summary judgment are presented, the Court "must consider each motion separately" and draw all inferences against each moving party in turn. <u>Reich v. John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997).

III.    <u>THE PLAINTIFFS' MOTION</u>

Plaintiffs have moved for summary judgment on their breach of contract and Chapter 93A counts. Doc. Nos. 115, 117. In resolving this motion, all reasonable inferences are drawn in Aetna's favor.

A.    <u>Breach of Contract</u>

To prevail on a breach of contract claim, Plaintiffs must establish (1) a binding contract; (2) breach of a specific provision of the contract; and (3) damages flowing therefrom. <u>Michelson v. Digital Fin. Servs.</u>, 167 F.3d 715, 720 (1st Cir. 1999). Plaintiffs, by virtue of the assignment of benefits, may stand in the shoes of Aetna's insureds. Thus, they may enforce the terms of the insurance policy or plan of an insured for which Plaintiffs obtained an assignment of benefits and rendered a service. <u>See</u> <u>City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.</u>, 156

F.3d 223, 227-28 (1st Cir. 1998). Plaintiffs have satisfied the first element of their claim, establishing a contract.

In order to establish breach of that contract, Plaintiffs must identify a specific provision of the relevant insurance policy or plan, which requires payment for the specific services rendered. On their motion, Plaintiffs have failed to meet their burden for numerous reasons.

First, Plaintiffs fail to identify any contract language whatsoever from even one plan or policy entitling them to payment. Under Massachusetts law, "[t]he insured [here Plaintiffs standing in their shoes] bears the initial burden of proving that a claim falls within the grant of coverage." GRE Ins. Grp. v. Metro. Boston Hous. P'ship, 61 F.3d 79, 81 (1st Cir. 1995); see also Camp Dresser & McKee, Inc. v. Home Ins. Co., 568 N.E.2d 631, 633 (Mass. App. Ct. 1991) ("As a general rule, the policyholder bears the initial burden of proving coverage within the policy description of covered risks."). Having failed to identify any contract or policy language, Plaintiffs necessarily fail to meet their burden of proof on their motion.[6]

Second, Plaintiffs appear to advance the following argument: that the taking of each patient's x-ray was a covered expense, that the interpretation of the x-ray necessarily follows from the taking of the x-ray, and that either Aetna has not established it paid another qualified person to interpret the x-ray or that Aetna has not established that the entity it did pay produced an x-ray read report as, it is suggested, is the standard practice. Doc. No. 117 at 6-8. This argument of logic fails for lack of evidence. Plaintiffs have pointed to no evidence establishing the underlying facts supporting each prong of their argument. That is, on Plaintiffs' motion, in

---

[6] The Court recognizes that, as a general matter, health insurance policies provide for payment to medical providers for medical services rendered to an insurer's insureds. That general understanding, however, is insufficient to compel summary judgment in Plaintiffs' favor.

light of the evidence before the Court that other providers have billed for interpreting the x-rays Plaintiffs interpreted, Plaintiffs bear the burden of establishing that Aetna did not pay another provider to read the x-ray or that such provider was paid in error, under the terms of the applicable plan or policy. On Plaintiffs' own evidence, from the explanations of benefits (EOBs), Aetna paid another provider in many instances. E.g., Doc. No. 129 ¶ 2005-1 (citing to explanations of benefits). Plaintiffs concede Aetna flagged its claims due to Aetna's perception that the global bills submitted by other physicians encompassed both the taking and reading of the x-rays. Doc. No. 117 at 6-7. On such a record, Plaintiffs cannot satisfy their burden of proof on summary judgment. Even assuming that the taking and reading of the x-ray were medically necessary and that the policies or plans cover all medically necessary expenses, there are a variety of other factors that limit recovery which Plaintiffs have not addressed. Each of the arguments Aetna advances in support of its motion for summary judgment are also arguments in opposition to Plaintiffs' motion: ERISA preemption, exhaustion of remedies, statute of limitations, and the like. Plaintiffs have not established that they prevail over each of these arguments.

Third, Plaintiffs contend that an executed assignment of benefits "means Defendants are to pay Plaintiffs and no one else per order of the insured for x-ray interpretation services." Doc. No. 117 at 6 n.1. Plaintiffs fail to cite any authority or contract language for their assertion. The sole sample assignment of benefits submitted by Plaintiffs contains no such language. Doc. No. 115-2 at 72. At most it says that the insured "understands" that his doctor is submitting the x-ray to Plaintiffs for "primary radiological interpretation and report by a specialist." Id. In any event, an assignment of benefits cannot alter the terms of the agreement between the insured

and the insurance company, without the agreement of the insurance company.  See City of

Hope, 156 F.3d at 228 ("[An] assignee acquires rights similar to those of the assignor, and is put

in the same position with reference to those rights as that in which the assignor stood at the time

of assignment.") (quoting 3 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of

Contracts § 404, at 5 (3d ed. 1960)).  The assignment entitles Plaintiffs to file a claim pursuant

to the relevant plan or policy with Aetna; it does not require Aetna to pay Plaintiffs and no one

else for interpreting the x-rays.

        For the foregoing reasons, Plaintiffs' motion for summary judgment as to their breach of

contract claims are DENIED.

        B.        Violation of Chapters 93A and 176D

        Plaintiffs' Chapter 93A and 176D claims are premised on Aetna's failure to make timely

payments on Plaintiffs' claims and reasonably investigate those claims before denying them.

As Plaintiffs have failed to prove their entitlement to payment under the plans, Aetna's failure

to make such payment cannot be deemed an unreasonable denial of coverage or failure to make

a settlement offer.  While it is true that "[a] party is not exonerated from chapter 93A liability

because there has been no breach of contract," NASCO, Inc. v. Public Storage, Inc., 127 F.3d

148, 152 (1st Cir. 1997), a party making a claim under Chapter 93A "must show that the

defendant's actions fell within at least the penumbra of some common-law, statutory, or other

established concept of unfairness, or were immoral, unethical, oppressive or unscrupulous,"

Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (quoting Quaker State Oil

Ref. Corp. v. Garrity Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989) (internal quotation marks

omitted)).[7]  Viewing the record in the light most favorable to Aetna, Plaintiffs have not

produced evidence that the failure to investigate the claims before denying them or the manner

in which Aetna denied Plaintiffs' claims was so "immoral, unethical, oppressive or

unscrupulous" so as to create Chapter 93A liability, where it has not been established that

Plaintiffs were entitled to payment on the policy and there is evidence that Aetna denied some

claims because they had already paid another provider for the same service.  See id.

Accordingly, Plaintiffs' motion for summary judgment on their Chapter 93A count is DENIED.

IV.     THE DEFENDANTS' MOTION

Aetna moves for summary judgment on Plaintiffs' breach of contract, Chapter 93A, and

negligence counts as they apply to the exemplar claims.  Doc. No. 125.  Plaintiffs have opposed

the motion.  Doc. No. 137.  In resolving Defendants' motion, all reasonable inferences are

drawn in Plaintiffs' favor.

A.     ERISA Preemption

Aetna moves for summary judgment on the ground that, for 270 of the exemplar claims,

Plaintiffs' state law actions are preempted by the Employee Retirement Income Security Act of

1974 (ERISA), 29 U.S.C. §§ 1001 et seq.

---

[7] Plaintiffs suggest that Defendants may have violated Chapter 176, § 3 in denying their
claims.  However, as Plaintiffs' counsel acknowledged during the hearing on these motions,
Chapter 176D does not provide a private right of action, and only private individuals may rely on
a violation of Chapter 176D as a per se violation of Chapter 93A.  See M. DeMatteo Constr. Co.
v. Century Indem. Co., 182 F. Supp. 2d 146, 159-61 (D. Mass. 2001).  Business entities, such as
Plaintiffs, suing, as they must, under Chapter 93A, § 11, are required to establish that the
conduct complained of violates Chapter 93A, § 2 by proving the elements of a cause of action
under that section.  Id.  In such cases, evidence of a Chapter 176D violation may be considered
in determining whether a defendant has engaged in an unfair business practice proscribed by
Chapter 93A, § 2, but is not dispositive.  See R.W. Granger & Sons, Inc. v. J & S Insulation,
Inc., 754 N.E.2d 668, 679 (Mass. 2001)

To establish that a plan, policy, or benefit package qualifies as an ERISA welfare benefit plan, Aetna must demonstrate the existence of:

> (1) a plan, fund or program (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries.

Wickman v. Nw. Nat'l Ins. Co., 908 F.2d 1077, 1082 (1st Cir. 1990) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc)).  Aetna has submitted the affidavit of Aetna investigator Kim Lajoie (Lajoie Affidavit), attesting that the claims in question were claims for medical benefits made by participants or their beneficiaries under plans established or maintained by applicable entities.  E.g., Doc. No. 129 ¶ 2003-21.  Aetna has also submitted plan documents for the exemplar claims which they contend qualify as ERISA plans.  E.g., ECF0001518-1727 (plan documents for exemplar claim 2003-21).  Plaintiffs fail to submit evidence disputing Aetna's factual submissions or argument that the plans identified by Aetna are not ERISA plans.  See Doc. No. 137.  Thus, the Court accepts that ERISA governs these plans and turns to the question of preemption.

The preemption provision in ERISA states that the statute will "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court has described the breadth of ERISA's preemption as "deliberately expansive."  See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987).  ERISA's preemption provision is triggered when a state law "relate[s] to" an employee benefit plan.  § 1144(a).  The Supreme Court has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."

Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). "[T]he Supreme Court has construed [ERISA's preemption provision] to preclude state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights, and this construction has been repeatedly followed." Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997) (citation omitted). Thus, state law breach of contract, negligence, and Chapter 93A claims arising out of a failure to pay benefits under an ERISA plan are preempted. Id. The Supreme Court and First Circuit case law on this point is settled. Id.; see also Hotz v. Blue Cross & Blue Shield of Mass., Inc., 292 F.3d 57, 60-61 (1st Cir. 2002) (holding Chapter 93A claim stemming from insurer delay in approving payment to be preempted); Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 7 (1st Cir. 1999) (holding state law tort claims brought by insured against insurer alleging negligence in the administration of ERISA plan to be preempted).

Plaintiffs argue that their claims do not "relate to" an ERISA plan, but are general claims for payment under state laws of general application. The noted precedents have rejected this argument. See Danca, 185 F.3d at 7 (noting that laws amounting to "alternative enforcement mechanisms" to the remedies provided in ERISA are preempted); Turner, 127 F.3d at 199. Next, Plaintiff argues that the saving clause in ERISA, which provides that the preemption provision "shall [not] be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities," saves their claims from preemption. 29 U.S.C. § 1144(b)(2)(A). This argument too has been roundly rejected in this Circuit. See Hotz, 292 F.3d at 60-61 (holding claims of unfair insurance settlement practices arising under Chapter 176D to be merely more specific forms of claims arising under the

generally applicable Chapter 93A and therefore not within the saving clause).[8]

Accordingly, because the state law claims brought by Plaintiffs are preempted by ERISA, Defendants' motion for summary judgment is ALLOWED as to all Plaintiffs' claims for those 270 exemplars governed by ERISA. A chart appearing as Exhibit A to this Memorandum and Order lists each exemplar claim and the applicable ground or grounds supporting summary judgment.[9]

---

[8] Plaintiffs also contend that "their suits do not seek to recover benefits due under ERISA governed health plans, nor have the plaintiffs attempted to stand in the shoes of any ERISA participant or beneficiary, by assignment or otherwise." Doc. No. 137 at 17. Despite this assertion, Plaintiffs have staked their entire case on the assignment of benefits form. They point to no other basis for any duty under which Aetna must pay them. They assert, based on the assignments, that, "Defendants are to pay Plaintiffs." Doc. No. 117 at 6 & n.1. To the extent they disclaim this theory of recovery, they have no basis for a claim. Moreover, the cases they cite on this issue, Regents for the Univ. of Cal. v. United Healthcare Ins. Co., No. 12-CV-0588 BEN (BGS), 2012 WL 4471416 (S.D. Cal. Sept. 25, 2012), and Lakeland Anesthesia v. Louisiana Health Serv. & Indem. Co., 2000 U.S. Dist. LEXIS 18626 (E.D. La. Dec. 5, 2000), are not on point. The Courts in those cases did find claims made by providers against insurance companies to be outside the scope of ERISA preemption. United Healthcare, 2012 WL 4471416, at *4; Lakeland, 2000 U.S. Dist. LEXIS 18626, at *23. Contrary to this case, however, the plaintiffs in both those cases "pursu[ed] . . . claim[s] for delayed payment of benefits based upon . . . separate provider agreement[s], not the plan." Lakeland, 2000 U.S. Dist. LEXIS 18626, at *23; see also United Healthcare, 2012 WL 4471416, at *4 ("[T]he claims in this case arose from the terms of the agreement between [the provider] and [the insurer] and are not claims for benefits under the terms of the ERISA plans."). Plaintiffs here point to no such independent agreement running between them and Aetna. Indeed, in their memorandum in support of their motion for summary judgment, Plaintiffs emphasized the assignments as the fulcrum of their right to payment and did not reference any other agreement to establish that right. Doc. No. 117 at 6 & n.1, 7-9.

[9] The list of the grounds for summary judgment applicable to each exemplar claim was compiled using Aetna's exhibits to their motion for summary judgment as modified, where appropriate, by independent determinations made by the Court after review of individual exemplar claims. Plaintiffs have not specifically disputed Defendants' evidence or argument as to the exemplar claims except as noted in this memorandum.

B.    Aetna's Role as a Third-Party Administrator

Aetna moves for summary judgment on the ground that, for eighty-three exemplar claims, Aetna was only a third-party administrator of the ERISA plans and not a fiduciary as those terms are defined in ERISA.  They are correct.

"'ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries.  With narrow exception, however, ERISA does not authorize actions against nonfidcuiaries of an ERISA plan.'" Terry v. Bayer Corp., 145 F.3d 28, 35 (1st Cir. 1998) (quoting Santana v. Deluxe Corp., 920 F. Supp. 249, 253 (D. Mass. 1996)).  "Courts have determined that when the plan administrator retains discretion to decide disputes, a third party service provider . . . is not a fiduciary of the plan, and thus not amenable to a suit" under ERISA.  Id.  "An interpretive bulletin issued by the Department of Labor bears this out, stating that an entity which merely processes claims 'is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan.'"  Id. at 35-36 (quoting 29 C.F.R. § 2509.75-8, D-2 (1997)).  Plaintiffs have not contended that the narrow exception to this rule, arising where servicers violate ERISA or perform acts proscribed by the statute, applies in this case.  See Reich v. Rowe, 20 F.3d 25, 29 (1st Cir. 1994).

Regarding the eighty-three claims for which Aetna seeks summary judgment on this theory, Aetna submitted the Lajoie Affidavit, which testifies that Aetna administers the plans underlying these claims for another entity and that entity funds the plans and "retains the right to make final decisions on claims."  See, e.g., Doc. No. 129 ¶ 2003-13.  The Lajoie Affidavit cites to the bates numbers of the plan documents for such plans in support of these statements. In response, Plaintiffs have not (a) submitted factual evidence disputing this evidence from

Aetna; (b) disputed Aetna's assertions by reference to evidence already in the record (for example by citation to portions of plan documents); or (c) disputed the law Aetna seeks to apply. See Doc. No. 137. In these circumstances, the Court finds that, as to the eighty-three claims identified by Aetna, it has established that it was merely an administrator lacking a fiduciary role and thus is not amenable to suit under ERISA.

Accordingly, Defendants' motion for summary judgment as to the breach of contract count for those exemplars claims for which Defendants acted only as a third-party administrator is ALLOWED. See Exhibit A.

C.    Failure to Exhaust Administrative Remedies

Aetna moves for summary judgment on the ground that, for 192 exemplar claims, Plaintiffs failed to exhaust their administrative remedies. ERISA requires fiduciaries of benefit plans to provide a review procedure for claims that are denied. 29 U.S.C. § 1133. "A plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides." Medina v. Metro. Life Ins. Co., 588 F.3d 41, 47 (1st Cir. 2009). The exhaustion requirement applies to health care providers claiming benefits derivatively through an assignment of benefits. See Tarr v. State Mut. Life Assur. Co. of America, 913 F. Supp. 40, 44-45 (D. Mass. 1996). Plaintiffs do not dispute that ERISA requires the exhaustion of remedies.

Regarding the 192 claims for which it seeks summary judgment based upon exhaustion grounds, Aetna relies upon the Lajoie Affidavit as setting forth evidence that Plaintiffs failed to exhaust the identified claims. See, e.g., Doc. No. 129 at ¶ 2006-1. The affidavit identifies those claims made pursuant to a plan with an exhaustion requirement and testifies that Plaintiffs failed

to comply with that provision. In response, Plaintiffs have not (a) submitted factual evidence disputing this evidence from Aetna; (b) disputed Aetna's assertions by reference to evidence already in the record (for example by contending the plan in question does not provide for or require the exhaustion of administrative remedies); or (c) disputed the law Aetna seeks to apply. See Doc. No. 137.

Plaintiffs did submit some general facts relating to exhaustion. They claim that "Plaintiffs only recently stopped submitting written appeals after Aetnas failed to respond to any of their previously filed appeals." Doc. No. 138 ¶ 20 (citing Ex. 1, Aff. of Dr. Abelson). It is unclear to which document Plaintiffs refer for support, as there are no exhibits attached to that filing and there is no affidavit from Dr. Abelson attached as "Exhibit 1" to any of Plaintiffs' filings on summary judgment. It appears that the reference may be to Exhibit 1 to the O'Leary Affidavit submitted with Defendants' motion for summary judgment, Doc. No. 127-1, which contains excerpts of the Rule 30(b)(6) deposition of Dr. Abelson. That document does address exhaustion, but states the opposite of Plaintiffs' contention that they stopped submitting appeals only recently, with Dr. Abelson stating that Plaintiffs stopped submitting written appeals "many, many, many years ago." Doc. No. 127-1 at 10. Thus, it appears that there is no evidentiary support for this assertion.[10]

Plaintiffs also "assert that Plaintiffs were never afforded an opportunity to appeal any of their claims as Plaintiffs never received a detailed explanation as to why their claims were

---

[10] In any event, in a motion for summary judgment, more is required than a mere conclusory assertion that Aetna failed to respond to appeals. See Medina–Muñoz, 896 F.2d at 8 (noting that summary judgment may be granted where a party's evidence is "merely colorable" or "if the nonmoving party rests merely upon conclusory allegations") (quoting in part Anderson, 477 U.S. at 249-50).

denied.  In some cases, Plaintiffs never even received EOBs from Aetnas or in cases where EOBs were sent no 'letters to follow' came from Aetnas providing a reason for the denial of the claim."[11]  Doc. No. 138 ¶ 15 (citing Exhibits M and L to Plaintiffs' motion for summary judgment).  Exhibit M is Aetna's response to Plaintiffs' requests for admissions, but Aetna admits none of the requests bearing on appeals of denied claims or on exhaustion generally. Doc. No. 115-5 at 2-7.  Exhibit L consists of excerpts from the Rule 30(b)(6) deposition of Kim Lajoie.  Doc. No. 115-4.  Lajoie does not say anything supportive of these factual assertions in the submitted deposition excerpts.  See id.  An EOB notifies the recipient of the denial of a claim and provides the necessary information to contact Aetna to inquire about the denial.  See, e.g., ECF0010170 (EOB for exemplar 2006-21); ECF0021469 (EOB for exemplar 2011-1).  As such, an EOB suffices to trigger Plaintiffs' obligation to appeal.   Moreover, the denials all arose after Aetna stopped paying Plaintiffs because Aetna concluded (correctly or incorrectly) that Plaintiffs sought payment for reading an x-ray that Aetna had already paid someone else to read.  Plaintiffs knew this view motivated Aetna's denials.  Aetna's investigator informed Dr. Abelson of their view, see Doc. No. 115-3 at 17-18, and Aetna wrote to Spinal seeking reimbursement for alleged overpayments, see, e.g., Doc. No. 76-11 at 1.  The evidence establishes Plaintiffs knew enough to appeal.

Plaintiffs claim that, for a small number of claims (152 out of approximately twelve thousand), Aetna never sent any EOBs, Doc. No. 115-3 at 17, ¶ 4 (Aff. of Dr. Abelson).

---

[11] There is no dispute that the "letters to follow" did not arrive.  Dr. Abelson attests to that in his affidavit.  Doc. No. 115-3 at 19, ¶ 28.  Lajoie admits the same in an affidavit she filed earlier in the case, which was submitted by Plaintiffs as part of their motion for summary judgment.  Doc. No. 115-8 at 3-4, ¶ 8.

Plaintiffs fail to identify these 152 claims in their papers for either the Court or Aetna. Plaintiffs also fail to establish that some of these claims lacking documentation are exemplar claims or to advance a reason to look beyond the exemplar claims. In these circumstances, the Court disregards the assertion that, as to these claims, Plaintiffs could not appeal because they did not receive EOBs.

For the foregoing reasons, the Court finds that Aetna has established that Plaintiffs failed to exhaust their remedies, as required, regarding 192 exemplar claims. Accordingly, these unexhausted claims are barred and Defendants' motion for summary judgment is ALLOWED as to the breach of contract count for those 192 exemplars claims. See Exhibit A.

      D.     Contractual Limitations Period

Defendants move for summary judgment on the ground that, for fifty-four claims, Plaintiffs filed suit after the expiration of the three-year limitation period contained within the relevant benefit plans. For plans governed by ERISA, and as a matter of general contract law, contractual limitation periods are enforced if reasonable. See Heimeshoff v. Hartford Life & Acc. Ins. Co., 134 S. Ct. 604, 612 (2013) (holding contractual limitation periods enforceable for ERISA plans if reasonable); Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 771 (Mass. 2012) (holding contractual reduction in limitation period enforceable if reasonable and not contrary to controlling statute). Here, Plaintiffs stand in the shoes of the insured through the assignment of benefits and are subject to the same contractual terms as the insured. See City of Hope, 156 F.3d at 227-28.

The Supreme Court has held a limitation period within an ERISA plan that required any suit to be filed within three years after the date by which the proof of loss was due to be

reasonable. <u>Heimeshoff</u>, 134 S. Ct. at 612-13. Further, as a matter of Massachusetts contract law outside of the ERISA context,[12] shorter limitation periods have been found to be reasonable. See <u>Hays v. Mobil Oil Corp.</u>, 930 F.2d 96, 100 (1st Cir. 1991) (holding contractual limitation period of one year to be reasonable). For these reasons, the three-year limitation period contained in both the ERISA plans and those not so governed apply to Plaintiffs and are enforceable.

Regarding the fifty-four claims that Aetna argues are untimely under the applicable limitation period, the Lajoie Affidavit testifies that, for each of these claims, the applicable plan or policy contains a three-year limitation period running from the date when the proof of loss was due (in this case the date by which Plaintiffs had to submit their bill) and that the three-year period ran before the filing date of the applicable complaint. <u>See, e.g.</u>, Doc. No. 129 at ¶ 2006-23. In response, Plaintiffs have not (a) submitted factual evidence disputing this evidence from Aetna; (b) disputed Aetna's assertions by reference to evidence already in the record (for example by contending the limitation periods operates differently than described); or (c) disputed the law Aetna seeks to apply. <u>See</u> Doc. No. 137. In these circumstances, the Court finds that Aetna has established that the fifty-four claims identified by Aetna were filed too late and are barred by the contractual limitation period.

Accordingly, Defendants' motion for summary judgment as to the breach of contract count for those fifty-four untimely exemplars claims is ALLOWED. <u>See</u> Exhibit A.

E.     <u>Claims for Services Deemed Not Medically Necessary</u>

Defendants move for summary judgment regarding 170 claims, contending that the x-

_____

[12] No party has suggested that the law of any state other than Massachusetts governs.

20

ray interpretation underlying these claims was medically unnecessary, as another provider had previously interpreted the x-ray. Plaintiffs dispute the foregoing. Doc. No. 137 at 18-19.

In a challenge to a denial of insurance coverage, for both ERISA-governed insurance policies and those not governed by ERISA, there is a shifting burden of proof. Cleary v. Knapp Shoes, Inc., 924 F. Supp. 309, 315-16 (D. Mass. 1996). The insured—or, in this case, Plaintiffs standing in the insured's shoes—bears the initial burden to establish that the claim falls within the grant of coverage. Id. at 315. If the insured satisfies that requirement, the insurer then bears the burden to establish that the claim falls within an exclusion to coverage. GRE Ins. Grp., 61 F.3d at 81.[13] For purposes of Defendants' motion, the Court will accept that Plaintiffs have met their burden of proof to establish coverage based upon the evidence that they did interpret the x-rays taken by other medical providers and the failure of Aetna to raise any coverage objection to paying a provider to interpret these x-rays.

Regarding each of these 170 claims for which Aetna says it paid another medical provider to read the x-rays, the Lajoie Affidavit establishes that Aetna paid another provider for interpreting the x-ray when it paid the provider under a global code.[14] As to these claims, Plaintiffs have failed to submit any factual evidence disputing the foregoing assertion. Thus, as to these 170 claims, the Court accepts as an undisputed fact that Aetna paid a provider other than Plaintiffs to interpret the x-rays underlying Plaintiffs' claims.

---

[13] For purposes of this argument, I will assume that, as to each claim, Aetna invokes an exclusion to coverage for which it bears the burden of proof rather than the protection of a limited grant of coverage under which Plaintiffs would bear the burden of proof.

[14] A global code, in this context, refers to a code that a provider attaches to a claim to seek reimbursement for both taking and interpreting the x-ray. Doc. No. 76 at 2-3.

Next, Aetna asserts that it rejected Plaintiffs' claims by invoking the exclusion "for services and supplies not necessary, as determined by Aetna, for the diagnosis, care, or treatment of the disease or injury involved." Doc. No. 127-2 at 15. In particular, Aetna maintains that nothing before it suggested that medical necessity justified a second interpretation of the x-ray. Plaintiffs advance four arguments in opposition to the foregoing conclusion.

First, Plaintiffs contend that chiropractors performed the initial interpretation of the x-ray, and they lack sufficient training to properly interpret x-rays. Doc. No. 138 ¶ 6. Plaintiffs "admit that chiropractors have the training to read x-rays in Massachusetts," id., they also "admit" that Massachusetts, Maine, Illinois, and Missouri permit licensed chiropractors to take and interpret x-rays, id. ¶ 7, and they "admit" that they know of no state which does not allow chiropractors to take and interpret x-rays. Id. ¶ 8. Plaintiffs also fail to cite any provision of any policy at issue in this litigation precluding reimbursement for an interpretation of an x-ray completed by a chiropractor.

Plaintiffs assert, however, that chiropractors "do not have the level of training of board certified radiologists and thus cannot properly interpret x-rays." Id.; see also Doc. No. 127-1 at 11 (Aff. of Dr. Abelson). As authority for this proposition, Plaintiffs cite, only, RD's sales brochure. Doc. No. 138 ¶ 8 (citing Doc. No. 115-2 at 9, 13-14 (sales brochure)). Plainly, chiropractors are legally qualified to read x-rays and did so in each of these cases. Even assuming Plaintiffs are better at interpreting x-rays, a fact for which the sales brochure is not competent evidence, nothing in the record suggests any of these x-rays needed a second

interpretation or "more qualified" interpreter beyond the chiropractor.[15]

Second, Plaintiffs contend that no initial interpretation of the x-rays occurred. Aetna, however, has submitted admissible evidence, in the form of EOBs showing reimbursement under a global code, sufficient to establish that other providers did interpret the x-rays in the absence of other evidence. Plaintiffs have submitted no evidence that the other providers did not interpret the x-rays.[16]

Third, Plaintiffs assert that the American Medical Association Code, and, perhaps good practice, requires the creation of a written x-ray report every time an x-ray is interpreted, Doc. No. 115-3 at 18, ¶ 18, and that the referring chiropractors did not create such reports. There are two problems with this argument. Plaintiffs have not submitted evidence that, in fact, the other providers failed to create such reports.[17] Plaintiffs also fail to point to any law or contract provision requiring either the creation of such a report as precondition to payment for interpreting an x-ray or defining the creation of the reports as the reimbursable act of interpretation.

Finally, Plaintiffs have not contended that, in the specific circumstances applicable to

---

[15] The mere fact that someone, perhaps the patient or chiropractor, requested that Plaintiffs interpret an x-ray does not constitute a medical opinion that either a second interpretation or better qualified interpreter was medically necessary as that term is used within the applicable policy.

[16] Plaintiffs' evidence that they instruct referring providers not to bill under a global code and that its assignment of benefits form amounts to a statement by the patient that the patient understands the referring provider will not bill for the interpretation of the x-ray is not sufficient to enable a fact-finder to find those services the referring provider did or did not perform.

[17] There is evidence that Aetna does not possess such reports, however, absent evidence that a provider must submit this report along with its bill, the absence of such reports from Aetna's files cannot support the reasonable inference that the referring providers created no such reports.

these 170 claims (or any subset of these claims), medical necessity warranted a second interpretation of the x-rays.

In light of the foregoing, Aetna has met its burden to establish that the denial of coverage fell within the applicable policy exclusion. Accordingly, Defendants' motion for summary judgment is ALLOWED as to the breach of contract count for the 170 exemplars for which Aetna denied the claim for lack of medical necessity supporting a second interpretation of the x-ray. See Exhibit A.

F.    Other Claims

Of the 315 exemplar claims, the exhibits appended to Aetna's memorandum in support of their motion for summary judgment fail to list thirteen of those claims. See Doc. Nos. 125-1 to 125-5. Upon review of these claims, the Court has found that ten of those claims fall within the defenses Aetna advanced in arguing their motion for summary judgment. For these claims, the affidavit and the plan documents establish, for the relevant exemplars, the applicability of one or more of the defenses, such as ERISA preemption or exhaustion. The Court has resolved these ten claims in favor of Aetna on the relevant bases.[18] This leaves three claims unresolved.

1.    **Exemplar Claim 2004-7**

The first such claim is exemplar 2004-7. Although the Lajoie Affidavit does not recite any applicable defenses to this claim, Doc. No. 129 ¶ 2004-7, a review of the plan documents

---

[18] The ten claims and corresponding defenses are as follows: 2003-9 (ERISA preemption, exhaustion, and contractual limitations); 2003-14 (ERISA preemption); 2003-24 (ERISA preemption, exhaustion, and contractual limitations); 2004-11 (exhaustion); 2004-16 (ERISA preemption, third-party administrator, and exhaustion); 2004-25 (ERISA preemption and contractual limitations); 2005-24 (exhaustion); 2006-24 (ERISA preemption and exhaustion); 2012-25 (ERISA preemption); Aetna-16 (ERISA preemption, exhaustion, and contractual limitations).

reveals that the plan contains a requirement that the insured obtain a referral from his or her primary care physician before obtaining treatment or services from out-of-network providers. ECF0002581.  According to the EOB, Aetna denied this claim due to the lack of a valid referral for the service.  ECF0002571.  Defendants, however, did not address the issue of failure to obtain a referral in their initial briefing on their motion.  At the motion hearing, the Court requested that the parties provide supplemental briefing on this issue.  The parties have now briefed the issue, Doc. Nos. 150, 152, and it is ripe for decision.

If a referral is not obtained before receiving treatment or services from an out-of-network provider, the plan documents state that the insured is responsible for payment of any resulting charges.  ECF0002578.  The EOB explains that the claim was being denied for failure to obtain a referral and advises that the insured is responsible for the charge.  ECF0002571. Plaintiffs have failed to submit any factual evidence disputing the foregoing information. Nonetheless, Plaintiffs argue that the obligation to obtain a referral ran to the referring providers and not to Plaintiffs; that the referring providers presumably had referrals for the entire service of taking and interpreting the x-rays and those referrals encompassed Plaintiffs' interpretation; and that the denial of claims on the basis of failing to obtain a referral is disingenuous because Aetna paid the referring providers for interpreting the x-rays, the same service Plaintiffs provided.

Plaintiffs, however, fail to offer any evidence that, despite the materials cited above, there was compliance with the referral requirement contained in the plan.  Even assuming that a referral obtained for the referring provider would satisfy the requirement as to Plaintiffs' services, Plaintiffs have not produced evidence that such a referral was obtained or that Aetna

paid the referring provider for a claim identical to one submitted by Plaintiffs. Nor have Plaintiffs offered any argument that they are entitled to payment notwithstanding the absence of a referral. Thus, as to this claim, the Court accepts as undisputed facts that the plan in question required a referral for services performed by out-of-network providers, and that Aetna received no referral which encompassed Plaintiffs' services and denied payment on that basis. As Plaintiffs are not entitled to payment on a claim which fails to comply with plan requirements, Defendants' motion for summary judgment is ALLOWED as to the breach of contract count for exemplar 2004-7.

2.      **Exemplar Claim 2007-17**

The second claim remaining to be addressed is exemplar 2007-17. The Lajoie Affidavit recites that the claim was submitted without "precertification," and that such precertification was required to make the claim payable. Doc. No. 129 ¶ 2007-17. Defendants did not address the issue of failure to obtain prior authorization in their initial briefing on this motion. As with the issue of referrals, the Court requested that the parties provide supplemental briefing on this issue. The parties have now briefed the issue, Doc. Nos. 150, 152, and it is ripe for decision.

The plan document clearly states that the insured must obtain prior authorization before receiving treatment or services from non-network providers, and that the failure to obtain such prior authorization will result in the insured bearing responsibility for any resulting charges. ECF0012357. The EOB notified Plaintiffs that the claim was being denied on this ground. ECF0012338. Plaintiffs have not submitted any materials to dispute the foregoing evidence.

Similar to the issue of referrals, Plaintiffs argue that the obligation to obtain prior authorization rested with the referring provider and not with Plaintiffs; that the prior

authorization of the referring provider encompassed Plaintiffs' services; and that Aetna never notified Plaintiffs that prior authorization was required. Again, however, Plaintiffs fail to provide evidence challenging the claim of noncompliance with the plain language of the plan, by presenting evidence that the referring provider in fact obtained prior authorization which encompassed Plaintiffs' services or otherwise. Nor have Plaintiffs supported with citation to authority their argument that, notwithstanding noncompliance, they are entitled to payment. For these reasons, the Court accepts as undisputed facts that the relevant plan required prior authorization for services rendered by non-network providers and that Aetna did not authorize the services provided by Plaintiffs and denied the claim on that basis. As Plaintiffs are not entitled to payment on a claim which fails to comply with plan requirements, Defendants' motion for summary judgment is ALLOWED as to the breach of contract count for exemplar 2007-17.

     3.    **Spinal Exemplar 26**

The last remaining claim is Spinal exemplar 26. The Lajoie Affidavit does not recite any applicable defenses to this claim. Doc. No. 129 ¶ Spinal-26. A review of the two EOBs submitted for this claim reveals that a claim was submitted by the referring provider on April 21, 2010, ECF0036422, and that a second claim was submitted by Plaintiffs on April 23, 2010, ECF0036424. The EOB sent to Plaintiffs explains that the claim was being denied because Aetna had already been billed by another provider for the same service and had paid that provider for the service. ECF0036424. Plaintiffs have failed to submit any materials to dispute the foregoing evidence. Thus, as to this claim, the Court accepts as undisputed facts that Aetna received a prior claim for the service, made payment pursuant to that claim, and denied

Plaintiffs' claim on that basis. For the reasons described <u>supra</u>, Aetna has met its burden to establish that the denial of coverage fell within an exclusion for services deemed not medically necessary. Accordingly, Defendants' motion for summary judgment is ALLOWED as to the breach of contract count for Spinal exemplar 26 due to lack of medical necessity supporting a second interpretation of the x-ray.

V.  <u>OTHER ISSUES</u>

A.  <u>Plaintiffs' Chapter 93A Claims</u>

The Court has found that, for the claims governed by ERISA, all of Plaintiffs' state law claims are preempted, and that defenses apply to the breach of contract count for all of the remaining exemplars. Even where there has been no breach of contract, however, there is still potential for Chapter 93A liability for those claims not preempted by ERISA. <u>See</u> <u>NASCO</u>, 127 F.3d at 152. Accordingly, the forty-five claims which are not preempted must be examined to determine if they can support liability under Chapter 93A, § 11.

As developed during the hearing on these motions, Plaintiffs make the following argument for liability. Chapter 176D requires entities engaged in the business of insurance to "conduct[] a reasonable investigation based upon all available information" when refusing to pay a claim made pursuant to an insurance policy. Mass. Gen. Laws ch. 176D, § 3(9)(d); <u>see</u> <u>Thomas v. Metro. Life Ins. Co.</u>, 40 F.3d 505, 511-12 (1st Cir. 1994). Plaintiffs argue that when Aetna "flagged" and denied all of their claims on the basis that Plaintiffs, as a general proposition, were interpreting x-rays that had already been interpreted by the referring provider, they committed a violation of Chapter 176D, which can support liability under Chapter 93A, §

11.[19]  These statutes, Plaintiffs contend, required Aetna to review each claim submitted by

Plaintiffs, and to come to the conclusion that, as to each claim, liability was not reasonably clear

because the claims appeared to be outside the scope of coverage.  To this point, Plaintiffs have

submitted an affidavit from Dr. Abelson, which states that only 25% of claims were denied on

the basis of prior payment to another provider and the remaining 75% were denied for some

other reason, Doc. No. 115-6 at 3, ¶¶ 4-5, which shows, Plaintiffs say, that Aetna, who alleged

that they were denying claims on the basis of double-billing, were not engaging in any

investigation of the claims they were denying.

      Plaintiffs' case for liability is limited by established Massachusetts law that restricts

recovery pursuant to Chapter 93A under a theory of inadequate investigation to those cases

where, had the insurer engaged in reasonable investigation, liability would have been

reasonably clear.  Behn v. Legion Ins. Co., 173 F. Supp. 2d 105, 113 (D. Mass. 2001); Gaffney

v. AAA Life Ins. Co., 4 F. Supp. 2d 38, 40 (D. Mass 1998).  "Under Massachusetts law, the

denial of a claim under an insurance policy, following an inadequate claims investigation,

would not warrant liability unless the claimant were harmed by that inadequate investigation."

Gurnack v. John Hancock Mut. Life Ins. Co., 550 N.E.2d 391, 393 n.5 (Mass. 1990) (citing Van

Dyke v. St. Paul Fire & Marine Ins. Co., 448 N.E.2d 357, 362 (Mass. 1983)).

      Of the exemplar claims that are not preempted, there are two categories of claims that

---

[19] As explained in note 7, supra, a violation of Chapter 176D is not a per se violation of Chapter 93A when the claim is made pursuant to Chapter 93A, § 11.  The provisions of Chapter 176D may be considered as evidence in determining whether a defendant has engaged in an unfair business practice as defined by Chapter 93A, § 2.  See Fed. Ins. Co. v. HPSC, Inc., 480 F.3d 26, 35 (1st Cir. 2007) ("The Massachusetts Supreme Judicial Court has concluded that a violation of . . . chapter 176D, § 3 . . . is evidence of an unfair business practice under chapter 93A, § 2, which would give rise to a cause of action under chapter 93A, § 11.").

fail for lack of harm to Plaintiffs.  The first category consists of claims for which Aetna

received a prior claim from the referring provider and denied Plaintiffs' claim on the basis that

Plaintiffs' interpretation constituted a second read that was not medically necessary.  In this

scenario, proper investigation would have, and may have, revealed a prior claim for the same

service and no indication that a second opinion was medically warranted.  Under these

circumstances, if there had been reasonable investigation, liability would not have been

reasonably clear, and thus Plaintiffs were not harmed by any failure to investigate.[20]  See

Gurnack, 550 N.E.2d at 393 n.5.  Accordingly, for the thirty claims that are not preempted, but

for which Aetna received a prior claim for the same service, Defendants' motion for summary

judgment is ALLOWED as to Plaintiffs' Chapter 93A count.[21]

     The second category consists of claims for which the relevant plan required either

precertification or a valid referral in order for the claim to be payable, and none was received.

In these cases, reasonable investigation would have uncovered claims that did not appear to

comply with plan requirements and, for that reason, liability on those claims would not have

---

[20] To the extent that Plaintiffs argue that Aetna, in order to satisfy Chapter 176D, § 3, had
to require the referring providers to produce x-ray reports or otherwise ascertain that those
providers were in fact conducting the initial interpretation, that argument presumes the incorrect
standard under § 3. The applicable standard is whether an insurer denied the claim without
reasonable investigation when liability was reasonably clear.  Behn, 173 F. Supp. 2d at 113; Van
Dyke, 448 N.E.2d at 362.  Where there is a good faith basis that the claim was excluded from
coverage, liability is not reasonably clear.  See Behn, 173 F. Supp. 2d at 113-14.  In the face of
claims for the same service presented by referring providers, Aetna would have had a good faith
basis to believe that Plaintiffs' claims were not covered and could have denied the claims
without further investigation.

[21] The Court determined that thirty claims were subject to summary judgment on this
ground by taking the claims denied as not medically necessary, as listed in Exhibit A, and
removing from that list those claims which are subject to ERISA preemption.

been reasonably clear. Plaintiffs, therefore, were not harmed by any failure on the part of Aetna to reasonably investigate these claims. See Gurnack, 550 N.E.2d at 393 n.5. Accordingly, Defendants' motion for summary judgment is ALLOWED as to the Chapter 93A count for the ten claims which were denied on the basis of failure to obtain precertification or a referral.[22]

Eleven claims remain that are not preempted by ERISA, and for which the record before the Court does not reveal a basis which would render liability not reasonably clear. For these claims, to the extent Aetna conducted an inadequate investigation prior to denying the claims, they "ran the risk that subsequent events would not support [their] assertion" that the claims were excluded from coverage. See Van Dyke, 448 N.E.2d at 362. In these circumstances, the evidence in the light most favorable to Plaintiffs with all reasonable inferences drawn in their favor support the contention that Aetna denied all Plaintiffs' claims summarily without reasonable investigation. Such conduct would violate Chapter 176D and could, in turn, give rise to liability under Chapter 93A. For this reason, Defendants' motion for summary judgment is DENIED as to Plaintiffs' Chapter 93A count for the eleven claims remaining.[23] The Court notes that while Plaintiffs' claims arise from just eleven exemplars, evidence of Aetna's actions on other exemplar claims might bear on whether Aetna engaged in unfair business practices under Chapter 93A as to these eleven claims.

---

[22] The following exemplar claims fall within this category where the claim is not preempted but the affidavit or the EOB evidences that either a required precertification or referral was not obtained: 2003-22, 2004-7, 2004-23, 2005-22, 2006-9, 2006-10, 2007-17, 2009-13, 2009-21, and 2010-10.

[23] The claims fitting this description are as follows: 2003-7, 2004-11, 2005-24, 2006-4, 2006-22, 2009-2, 2009-22, 2010-4, 2011-23, 2011-25, and 2012-19.

B.     Plaintiffs' Negligence Claims

Under Massachusetts law, a negligence claim may arise out of a contractual relationship with the standard of care linked to the terms of the contract.  Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003).  Plaintiffs, however, have pointed to no duty—established by contract or otherwise—which Aetna has breached.  The failure to develop this argument in briefing the summary judgment motions is fatal to this claim.  "[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived."  Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995); see also Chao v. Ballista, 772 F. Supp. 2d 337, 347 n.5 (D. Mass. 2011) (deeming waived a claim not argued in opposition to summary judgment motion).  Accordingly, the Court considers Plaintiffs' negligence count to be waived and Defendants' motion for summary judgment as to these claims is ALLOWED.

C.     Plaintiffs' Complaints about Defendants' Document Production

Plaintiffs have raised the issue of Aetna's failure to produce documents relevant to categories of discovery ordered by the Court.  Plaintiffs raised a similar issue in a motion for default judgment decided prior to the filing of the instant motions.  Doc. No. 107.  As the Court explained in ruling on that motion, Doc. No. 114, Aetna has asserted in an affidavit that they have produced all relevant documents in their possession, custody, or control that they were able to identify after a reasonably diligent search, Doc. No. 110-1.  Since that ruling and prior to filing to the instant motion, Plaintiffs did not bring to the Court's attention, by a motion to compel or otherwise, additional allegations that Aetna has not honored its discovery obligations.

Neither this Court's previous orders nor the rules of discovery require Aetna to produce more than they already have.  Plaintiffs' argument that the failure to produce the documents in

question supports an inference that Aetna has destroyed or withheld those documents is untenable. Accordingly, Plaintiffs' allegations regarding Aetna's failure to produce documents do not support a Chapter 93A claim nor do they justify sanctions.

D.    Defendants' Motion to Strike

Defendants have moved to strike an affidavit submitted by Plaintiffs as an exhibit to a "Supplemental Response in Opposition to Defendant's Motion for Summary Judgment." Doc. No. 142. Defendants assert that the affidavit was untimely in that it was not filed with Plaintiffs' opening brief or opposition to Defendants' cross-motion, and that Plaintiffs have not established that the facts set forth in the affidavit were unavailable at the time when Plaintiffs submitted their briefs. Doc. No. 143 at 2-5. Further, Defendants argue that certain paragraphs of the affidavit set forth inadmissible information. Doc. No. 143 at 5.

The Court notes that there is frequently a difference between the reason for which an insurer denies a claim for benefits made pursuant to an insurance policy and the defense that the insurer may raise in disclaiming liability in a lawsuit challenging that denial. For that reason, the relevance of the affidavit may be marginal. However, because the affidavit does not appear to prejudice Defendants in any material way, the Court declines to strike the affidavit as untimely or inadmissible. Thus, Defendants' Motion to Strike the Abelson Affidavit is DENIED.

E.    Plaintiffs' Opposition to Defendants' Post-Hearing Memorandum

During the hearing on the instant motions, the Court requested that one of the parties make a brief filing alerting the Court to the location on the docket of certain promotional materials produced by Plaintiff Spinal. Defendants obliged, notifying the Court that the

requested materials appeared as exhibits to document number 76 on the docket in this matter, which is a memorandum submitted by Defendants in opposition to a motion to compel filed by Plaintiffs. Doc. No. 148. Plaintiffs have opposed this filing, arguing that the materials were not properly included in the record on summary judgment. Doc. No. 149.

Rule 56 of the Federal Rules of Civil Procedure vests the Court with broad discretion to consider evidence not cited by the parties. The Court, in resolving a motion for summary judgment "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). There is no indication that the Rule intends to restrict the Court's consideration to the materials the parties submit to support their motions. Such a reading would be inconsistent with the broad discretion Rule 56 commits to the Court, including the ability to give a party additional opportunities to support an assertion of fact, Fed. R. Civ. P. 56(e)(1), or, indeed, to raise summary judgment sua sponte, Fed. R. Civ. P. 56(f)(3). Plaintiffs make no argument that the materials presented in Defendant's filing would not be admissible in evidence. For these reasons, the Court declines to strike or otherwise disregard Defendants' filing.

IV.     <u>CONCLUSION</u>

In summary, Plaintiffs' Motion for Summary Judgment, Doc. No. 115, is DENIED.

Defendants' Motion for Summary Judgment, Doc. No. 124, is DENIED as to the Chapter 93A

count for the eleven claims listed in note 23 <u>supra</u> and is otherwise ALLOWED. Defendants'

Motion to Strike, Doc. No. 142, is DENIED. The Court will hold an initial pretrial conference

on April 9, 2014 at 3 p.m.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge